**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BMO Harris Bank N.A.,

Plaintiff,

v.

Case Number: 1:18cv39

Judge Michael R. Barrett

Ronald P. Murphy,

Defendant,

**OPINION & ORDER**

This matter is before the Court upon the Motion for Summary Judgment filed by Plaintiff BMO Harris Bank N.A. (Doc. 17) and the Partial Motion for Summary Judgment filed by Defendant Ronald P. Murphy (Doc. 30). These motions have been fully briefed (Docs. 18, 20, 31 32). In addition, the parties have filed several motions related to the summary judgment motions: Plaintiff's Motion to Strike (Doc. 19); Defendant's Motion to Exclude (Doc. 33); and Plaintiff's Motion to Exclude Expert Report of James Burritt (Doc. 36). These motions have also been fully briefed. (Docs. 22, 23, 34, 35, 37).

## I. BACKGROUND

This matter is a breach of contract action arising out of loan and security agreements. The following background facts are undisputed. Rovan Leasing Systems, Inc. ("Rovan") entered into a series of five loan and security agreements with General Electric Capital Corporation ("GECC") and GE Capital Commercial, Inc. ("GECCI"). The loans financed the purchase of commercial equipment, which served as collateral. Defendant Ronald P. Murphy personally guaranteed the loans. Plaintiff BMO Harris is the successor-in-interest to GECC and GECCI with respect to the loans, collateral, and

guaranties.

Rovan defaulted on the loans and then shortly thereafter filed an Assignment for the Benefit of Creditors in the Hamilton County, Ohio Probate Court and began liquidation proceedings ("ABC Case"). James R. Burritt was appointed the Assignee by the Probate Court to administer and liquidate the assets and distribute the proceeds among creditors. Rovan surrendered the financed equipment, which Plaintiff then sold. Plaintiff credited the net proceeds of the sale and the distribution from the assignment proceeding against the debt.

Despite these payments, Plaintiff claims that Defendant still owes a balance, along with default interest, late charges, expenses associated with repossessing and selling the collateral, and attorneys' fees and collection costs. Plaintiff claims that Defendant is in default under the guarantees for failing to pay the amounts due. In its Motion for Summary Judgment, Plaintiff claims it is entitled to judgment in the amount of $340,684.17, plus interest accruing at the rate of $137.76 per day following January 11, 2018.

Defendant disputes this amount and maintains that Plaintiff did not accurately account for all the payments it received.[1] Defendant argues that there is a genuine issue of material fact as to whether Plaintiff disposed of the collateral in a commercial

---

[1]With regard to missing payments, Defendant points to a second $549.00 distribution from the assignment proceedings. In its Reply to its Motion for Summary Judgment, Plaintiff agreed to apply the $549.00 payment to the amount it claims is due. Plaintiff now claims that the outstanding principal owed as of January 11, 2018 is $340,135.17. (Doc. 20, PAGEID 376). To the extent that Defendant has raised the issue of this second payment in its Motion for Partial Summary Judgment, that part of the Motion is DENIED as MOOT.

reasonable manner—as that term is defined in the Uniform Commercial Code ("UCC"). Defendant also argues that Plaintiff failed to comply with other UCC requirements, including sending "authenticated notification of disposition" to Defendant as the secondary obligor. Defendant maintains that the failure to comply with the notice requirement is a bar to recovery.

In its Partial Motion for Summary Judgment, Defendant argues that Plaintiff cannot recover more than $95,154 from him in this case. Defendant points out that in the ABC Case, the Hamilton County Court of Common Pleas entered an Agreed Judgment Entry providing that Plaintiff's claim in Rovan's insolvency proceeding was an allowed unsecured claim of $115,000. Defendant argues that his liability cannot exceed Rovan's underlying debt and Plaintiff is bound by the $115,000 judgment it obtained in the prior proceeding. Defendant maintains that after deducting the $19,846 in distributions Plaintiff has already received, $95,154 is the maximum possible recovery Plaintiff can receive.

## II. <u>ANALYSIS</u>

### A. <u>Standard of review</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether this burden has been met by the movant, this Court views the evidence

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). However, the trial court is not required to scour the record to establish that "it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden v. City of Memphis Police Dep't,* 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**B. Choice of law**

The loan and security agreements provide for the application of Utah and Texas law. Because this is a federal court sitting in diversity, the Court will apply the choice-of-law principles of the forum state. *Dawson v. Allstate Vehicle & Prop. Ins. Co*., 709 F. Supp. 3d 444, 449 (S.D. Ohio 2024) (citing *Muncie Power Prods., Inc. v. United Techs. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003)). Under Ohio law, an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice of law analysis to be undertaken. *Transportation Ins. Co. v. Busy Beaver Bldg. Centers, Inc*., 969 F. Supp. 2d 875, 883-84 (S.D. Ohio 2013) (citing *Glidden Co. v. Lumbermens Mut. Cas. Co*., 112 Ohio St.3d 470, 861 N.E.2d 109, 115 (Ohio 2006)). Here, the parties take

the position that the legal analysis is substantially identical under Utah, Texas and Ohio law. Therefore, the Court will apply the substantive law of Ohio.

**B. <u>Breach of Contract</u>**

Plaintiff claims that Defendant breached the guaranties under the loan agreements by failing to make the payments required after Rovan defaulted.

As this Court has explained, Ohio law defines a guarantee is "an undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty, by another person who himself remains liable to pay or perform the same." *Core-Mark Midcontinent, Inc. v. Bloom*, No. 1:07-CV-850, 2009 WL 1416059, at *4 (S.D. Ohio May 19, 2009) (citing *Galloway v. Barnesville Loan*, 74 Ohio App. 23, 57 N.E.2d 337, 339 (Ohio App.1943) (quoting 29 Ohio Jurisprudence § 308 at 1063). "[I]t is well settled that the interpretation of a guaranty is identical to the principles of regular contract interpretation." *111 Debt Acquisition LLC v. Six Ventures, Ltd.*, No. C2-08-768, 2009 WL 414181, at *3 (S.D. Ohio Feb. 18, 2009), aff'd., 413 F. App'x 824 (6th Cir. 2011) (citing *Stone v. Nat'l City Bank*, 106 Ohio App.3d 212, 217, 665 N.E.2d 746 (Ohio Ct. App.1995)).

In its Motion for Partial Summary Judgment, Defendant makes several arguments as to why his liability cannot exceed the amount of Rovan's underlying debt and Plaintiff is bound by the $115,000 judgment in the ABC case. The Court will address these arguments first, then turn to Plaintiff's Motion for Summary Judgment.

**1. <u>ABC case</u>**

It is undisputed that after Plaintiff filed a proof of claim in the ABC Case and it was

rejected, Plaintiff sued Burritt, as the Assignee, in the Hamilton County Court of Common Pleas. (Doc. 17-3). The parties later resolved this lawsuit and entered into an Agreed Judgment that amended and allowed Plaintiff's claim in the ABC case as an unsecured claim in the amount of $115,000. (Doc. 18-3).

Defendant calls the Court's attention to *Highway Commercial Services v. Murphy*, which is case involving another creditor of Rovan filed in the Franklin County Common Pleas Court. (See Doc. 17-9 for unpublished opinion). Just as in this case, the creditor agreed to an amount for its claim in the ABC case and then later sued Defendant on its guaranty for the remainder of what the creditor claimed was owed. (Doc. 17-9, PAGEID 284-85). The Franklin County court held that Defendant, as guarantor, was only secondarily liable. (Doc. 17-9, PAGEID 285). The court held that Defendant could not be liable for more than Rovan ultimately owed and granted Defendant's motion for partial summary judgment. (Doc. 17-9, PAGEID 286). Defendant calls for the same result here.

Plaintiff acknowledges that there is caselaw in Ohio providing that the release of the principal debtor from liability likewise releases the guarantor, but distinguishes this case based on language found in the four guaranties signed by Defendant:

> [Plaintiff] may at any time and from time to time, without notice to or the consent of any Guarantor, and without affecting or impairing the obligation of any Guarantor hereunder… (c) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate, in any manner, any of the indebtedness . . .

(Doc. 13-6).

As the Sixth Circuit has explained: "[n]umerous state court decisions dealing with

the continued liability of guarantors after discharge of the principal obligor have held that the discharge of the principal obligor does not relieve the guarantor of liability where the right of recourse against the guarantor is expressly reserved in the contract releasing or discharging the principal obligor." *United States v. Beardslee*, 562 F.2d 1016, 1023 (6th Cir. 1977) (collecting cases). Accordingly, this Court has acknowledged that even though at common law, a complete discharge the principal debtor's liability would have operated as a complete discharge of the guarantor's liability, the principal debtor remains liable where there is express language in the guaranty that the liability of the guarantor will not be diminished by any settlement agreements or releases between the principal debtor and the creditor. *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1222 (S.D. Ohio 2001).

Similarly, an Ohio Court of Appeals has held that a settlement and general release did not discharge the liability of the guarantor where the terms of the guaranty agreement permitted the creditor to pursue the debt against the guarantors, even though the creditor had entered into a settlement agreement and general release with the corporate board of the debtor. *Stump Hill Farm, Inc. v. PFC Lamont Hill Mem. Army Navy Garrison 2003, Inc.*, 2012 WL 4475335, *3 (Sept. 24, 2012). The language in the guaranty agreement before the court was almost identical to the language found in the four guarantees in this case:

> [Stump Hill] is authorized, without notice or demand and without affecting the liability of either of the Guarantors from time to time to * * * (e) settle, release, compromise, collect, or otherwise liquidate the Indebtedness and any security or collateral in any manner without affecting or impairing the obligations of the [Guarantors].

2012 WL 4475335, *4. Based on this language, the Ohio Court of Appeals concluded that the settlement did not discharge the liability of the guarantor. *Id*. Given the similarity in the language, this Court concludes that the Agreed Judgment entered in the ABC case did not serve to release Defendant from all liability.

Next, Defendant makes two somewhat related arguments that the Agreed Judgment bars Plaintiff's claim based on the principles of judicial estoppel and collateral estoppel.

"The equitable doctrine of judicial estoppel generally prohibits a litigant from 'convincing a court to adopt one position at one time and then seeking the opposite position at a later time,' and it typically applies where a party 'takes conflicting positions across different cases.'" *Durham v. Niffenegger*, No. 23-4040, 2024 WL 4711724, at *3 (6th Cir. Nov. 7, 2024) (quoting *Mackey v. Rising*, 106 F.4th 552, 567 (6th Cir. 2024)). However, the doctrine of judicial estoppel generally does not apply where litigation is resolved by agreed order. *See Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218–19 (6th Cir. 1990) (concluding there was no judicial acceptance in the agreed orders where the agreed orders contained no findings regarding prior allegations and the district court's entry of the agreed orders did not constitute acceptance of them for purposes of judicial estoppel). Here, Plaintiff and Burritt presented an agreed judgment entry to the Hamilton County Court of Common Pleas. (Doc. 18-3). The entry does not make any findings, but only states that based on the agreement of the parties, Plaintiff's proofs of claim is amended to the unsecured claim amount of $115,000 and the claims are deemed allowed by the Assignee in the ABC Case. (Doc. 18-3, PAGEID 325). The Court finds

that the Agreed Judgment does not constitute judicial acceptance of any factual allegations under the doctrine of judicial estoppel. *Accord Teledyne,* 911 F.2d at 1219. Therefore, judicial estoppel is not a bar to Plaintiff's breach of contract claim.

The Court also finds that collateral estoppel does not operate to bar Plaintiff's claim. In Ohio, collateral estoppel applies where there is "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011) (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997)). Here, the Agreed Judgment was entered in a case between Plaintiff and the Assignee. Defendant was not a party to the case and therefore collateral estoppel does not apply.

Having addressed the arguments in Defendant's Partial Motion for Summary Judgment (Doc. 30) and found them without merit, the Court concludes that Defendant's Motion is DENIED.

The Court will now address the arguments Defendant raised in response to Plaintiff's Motion for Summary Judgment, all of which center on the application of the UCC.

**2. <u>UCC</u>**

As the parties have recognized, Ohio has adopted Article 9 of the Uniform Commercial Code.

Section 9-610 of the UCC is codified at Ohio Revised Code §1309.610 and permits a secured party to dispose of collateral after a debtor's default. However, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms must be commercially reasonable." Ohio Rev. Code § 1309.610(B).

Defendant argues that (1) he did not receive notification of disposition of collateral as required by the UCC; and (2) the disposition of the collateral was not commercially reasonable.

Under Ohio Revised Code § 1309.611, which is derived from Section 9-611 of the UCC, a "secured party who disposes of collateral under section 1309.610 of the Revised Code shall send a reasonable authenticated notification of disposition to the [debtor]." Ohio Rev. Code § 1309.611(B). However, the Supreme Court of Ohio has explained that "[i]t is well-established law in Ohio that '[a] secured creditor can * * * satisfy the notice requirements * * * merely by sending notice to the debtor. Actual receipt of the notice is not required and need not be proven." *Manshadi v. Bleggi*, 134 N.E.3d 695, 707 (Ohio Ct. App. 2019) (quoting *Ford Motor Credit Co. v. Potts*, 47 Ohio St.3d 97, 99, 548 N.E.2d 223 (Ohio 1989)).

While Defendant states that he does not recall receiving the Notices of Disposition, Plaintiff does not need to prove actual receipt. As part of the briefing on the summary judgment motions, Plaintiff has filed copies of Notices of Disposition of the Collateral sent to Defendant on October 21, 2015 and January 7, 2016. (Doc. 20-1, Debb White Aff. (6/28/2026), PAGEID 391-432). The collateral was sold between February 16, 2016 and August 10, 2025. (Doc. 17-1, Debb White Aff. (5/24/2018), PAGEID 232). Based on

this filing and the accompanying affidavits, the Court finds that there is no genuine issue of material fact regarding whether notice under Ohio Revised Code § 1309.611 was reasonable. *Accord FirstMerit Bank v. Miller*, 2009 WL 2940199, *2 (Ohio Ct. App. Set. 10, 2009) (no genuine issue of material fact where debtor did not dispute that the notice was timely, that it was sent to the correct address, and that it was reasonable as to its content).

Next, Defendant argues that a genuine dispute of fact exists as to whether Plaintiff acted in a commercially reasonable manner in disposing of the collateral.

According to the statute, a disposition of collateral "is made in a commercially reasonable manner if the disposition is made: "(1) [i]n the usual manner on any recognized market; (2) [a]t the price current in any recognized market at the time of disposition; or (3) [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Ohio Rev. Code § 1309.627(B). "Although the UCC does not expressly specify which party has the burden of proving that a sale was commercially reasonable, there is authority that the burden must be borne by the secured creditor." *Ramsey v. Ernoko, Inc.*, 74 Ohio App. 3d 749, 755, 600 N.E.2d 701, 705 (Ohio Ct. App. 1991); *First Nat. Bank of¨ New Bremen v. Turner*, 1 Ohio App. 3d 152, 155, 439 N.E.2d 1259, 1263 (Ohio Ct. App. 1981) (stating that the burden of proof that the sale was commercially reasonable lies with the secured party); *see also Fifth Third Bank v. Werner*, 2010 WL 3816708, *3 (Ohio Ct. App. Sept. 30, 2010) (citing Ohio Rev. Code § 1309.626) ("When a debtor raises the issue of commercial reasonableness, the secured party carries the burden of proof on the issue.").

Defendant argues that Plaintiff's sale of the collateral yielded an unreasonably low price for the collateral. However, the Ohio Supreme Court has held that "whether a sale of collateral is commercially reasonable will turn upon all the facts in a particular case. Price alone is not the determinative factor." *Huntington Natl. Bank v. Elkins*, 53 Ohio St.3d 79, 81, 559 N.E.2d 456 (Ohio 1990).

Defendant also argues that Plaintiff cannot establish that the sale was commercially reasonable because Plaintiff delayed selling the collateral for nearly eleven months, did not obtain sufficient competitive bids for the collateral, and did not advertise the collateral according to usual commercial practice.

The official comment to Ohio Revised Code §1309.610 states that there is not a specific period within which a secured party must dispose of collateral. *See also Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chemicals, Inc*., 51 Ohio App. 3d 158, 163, 555 N.E.2d 654, 660 (Ohio Ct. App. 1988) (citing the official comment to former provision which is analogous to Ohio Revised Code §1309.610). The statute also states that "[t]he fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner." Ohio Rev. Code § 1309.627.

Instead, courts decide commercial reasonableness based on a variety of factors, including:

> (1) the nature of the collateral, including its fair market value; (2) the resale price of the collateral; (3) the nature and amount of advertising; (4) the use

> of genuine, reasonable efforts to reach the appropriate market best able to use the collateral; (5) whether the secured party's efforts are reasonably calculated to reach a reasonable number of bidders or potential purchasers in the appropriate market; (6) the method used to solicit bidders or potential purchasers; (7) the number of potential buyers contacted prior to the sale; (8) the nature of the sale (i.e., was it public or private? was it conducted in a reasonable manner under normal business conditions using normal business practices?); (9) the employment of an experienced, professional auctioneer; (10) the number of bids actually received; (11) the presence of collusion or self-dealing; (12) the good-faith of the secured party.

*Laczko v. Toledo Tr. Co.*, No. 83-1189, 1985 WL 7507, at *4 (Ohio Ct. App. June 14, 1985) (collecting cases).

The collateral consisted of four 2012 Vanguard dry van trailers, one 2002 Ottawa yard truck, eleven 2012 Great Dane dry van trailers and three 2016 Freightliner tractors. (Doc. 17-1, Debb White Aff. (5/24/2018), PAGEID 232, ¶ 32). Plaintiff has described the steps it took to dispose of the collateral in the Declaration of Tyler J. Townsend, who serves as Remarketing Leader for Plaintiff. (Doc. 20-2, Townsend Decl..). Townsend explains that some of the delay in selling the collateral was due to a dispute with another party over lien priority. (Townsend Decl., ¶ 15). Once that dispute was resolved, these steps were taken:

- Plaintiff evaluated each unit to determine an expected resale value based on the condition of the collateral. (Townsend Decl., ¶ 15).
- Based on the evaluation, one truck was sold at public auction because it was determined to be in below average condition. (Townsend Decl., ¶ 16). While this truck was valued at $7,700, it sold at auction for $11,509. (Id.)
- Plaintiff sold the remaining units through private sales. (Townsend Decl., ¶ 17).
- Plaintiff advertised fifteen of these units for sale. (Townsend Decl., ¶ 17).

These units all sold for an amount over the estimated fair market value. (Townsend Decl., ¶ 18).

- Plaintiff sold three of the units directly to a dealer. (Townsend Decl., ¶ 19). These three units sold for 92% of their estimated fair market value. (Townsend Decl., ¶ 19).
- Plaintiff rejected lower offers and negotiated higher offers. (Townsend Decl., ¶ 20).
- All the units were sold within a six-month period (February 2016 to August 2016). (Townsend Decl., ¶ 23).

While Defendant questions the timing and manner of the sales, it is undisputed that Plaintiff sold the majority of the collateral for a price over its estimated fair market value. All but three units were sold publicly based on an advertisement or public notice of sale. Three units were sold to a dealer who was contacted directly. The Court concludes that these efforts establish as a matter of law that the collateral was sold in a commercially reasonable manner.

Because the Court finds it unnecessary to reach this conclusion without relying upon the Affidavit of James R. Burritt, Plaintiff's Motion to Strike (Doc. 19) is DENIED as MOOT.

## III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 17) is **GRANTED**;
    a. Because the Court finds it unnecessary to rely upon the Affidavit of James R. Burritt in deciding Plaintiff's Motion for Summary

Judgment, Plaintiff's Motion to Strike (Doc. 19) is **DENIED as MOOT**;

2. Defendant's Partial Motion for Summary Judgment filed by Defendant Ronald P. Murphy (Doc. 30) is **DENIED**;

3. The Clerk of Court is **ORDERED** to enter judgment in favor of Plaintiff and against Defendant;

    a. Judgment will be entered in favor of Plaintiff in the amount of $340,135.17, as established by Plaintiff's summary judgment motion, the accompanying affidavit of Debb White Aff. (5/24/2018) (Doc. 17-1) and the revision to this amount in Plaintiff's Reply to its Motion for Summary Judgment (Doc. 20, PAGEID 376);

    b. It is further **ORDERED** that Plaintiff is entitled to an amended Judgment to the extent of any additional interest, expenses and attorneys fees incurred by plaintiff after January 11, 2018 with such additional amounts to be established by an affidavit accompanying a motion for amended judgment;

4. Given the disposition above, Defendant's Motion to Exclude Paragraphs 16 to 25 and 37 of Tim Bowling's Report (Doc. 33) is **DENIED as MOOT;** and Plaintiff's Motion to Exclude Expert Report of James Burritt (Doc. 36) is **DENIED as MOOT**; and

5. This case is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge